FEDERAL DISTRICT COURT
WESTERN MASSACHUSETTS DISTRICT
(SPINGFIELD, MASSACHUSETTS)

| | |
|---|---|
| **Rinaldo Del Gallo, III**<br>Plaintiff,<br><br>v.<br><br>**Boston Mayor Marty Walsh,** in his personal and professional capacity<br><br>**Boston Police Commissioner William B. Evans,** in his personal and professional capacity<br><br>**Boston Parks and Recreation Department Commissioner Christopher Cook,** in his personal and professional capacity<br><br>**An unknown Boston Police Officer with badge number 2578,** in his personal and professional capacity<br><br>**An unknown Boston Police Officer with badge number 16,** in his personal and professional capacity<br><br>**Boston Police Officer Captain Greland** Badge Number 10<br><br>Any one of approximately 300 Unnamed John and Jane Doe Police Officers at the Boston Free Speech Rally manning the gates or on the grounds or who interacted with Rinaldo Del Gallo, that would not allow Rinaldo Del Gallo in to speak despite being asked to be allowed into speak, or any supervising Police Officers, in their personal and professional capacities, | *[Handwritten: "This is just a reply brief, not a motion"]*<br><br>17CV30167-MAT<br><br>**MOTION FOR A PRELIMINARY INJUNCTION**<br><br>**REPLY BRIEF** |

MOTION for a Preliminary Injunction - 1

whose names will be determined in discovery.

The City of Boston

                      Defendants

---

I, Rinaldo Del Gallo, hereby testify under pains of perjury that all of the following facts are true or believed to be true, all of the following beliefs are believed to be true, and all of the following statements of law are beliefs believed to be true:[1]

---

Rinaldo Del Gallo, III      November 16, 2017

HECKLER'S VETO

Without calling it such, the defendant's argument is a heckler's veto argument. They basically argue that while the people that were part of the Boston Free Rally were not misbehaving, there was widespread lawlessness among the crowds, particularly amount Antifa. I would agree and admit that contrary to many media reports, the conduct described by the crowd in the memorandum of the City of Boston is correct.

But arguments that *others* may behave badly and therefore speech should be surprised is a heckler's veto. "Participants in an orderly demonstration in a public place are not chargeable

---

[1] While this document is a legal memandum, it also serves as a supporting affidavit because it is made under pains of perjury.

with the danger, unprovoked except by the fact of the constitutionally protected demonstration itself, that their critics might react with disorder or violence." *Brown v. Louisiana,* 383 U.S. 131, 133 n.1 (1966).

Even if the Boston Police is trying to protect the speakers, it is still an impermissible heckler's veto. "[P]olice effectuate a heckler's veto when they remove a speaker from a hostile crowd for the speaker's own safety." *Bible Believers v. Wayne County,* 805 F.3d 228, 266, 2015 U.S. App. LEXIS 18745, *92, 2015 FED App. 0258P (6th Cir. 2-15).

Courts have held that when the cost to the speaker of using the forum location is made to depend not only on expenses for which she may be directly responsible, but also for the expenses potentially created by counterdemonstrators and others over whom she has no control, an unconstitutional **"heckler's veto"** can be created. *Van Arnam v. GSA,* 332 F. Supp. 2d 376, 402 (Dist. Mass. 2004).

Here the City of Boston et al is arguing that while the speakers at the Rally for the Republic will not be causing problems, it could cause a problem with the road race that is to happen at 10:00 AM and will be over by the time of the noon rally. The court should take this into mind:

> Notably, a heckler's veto effectuated by the police will nearly always be susceptible to being reimagined and repackaged as a means for protecting the public, or the speaker himself, from actual or impending harm. After all, if the audience is sufficiently incensed by the speaker's message and responds aggressively or even violently thereto, one method of quelling that response would be to cut off the speech and eject the speaker whose words provoked the crowd's ire. Our point here is that before removing the speaker due to safety concerns, and thereby permanently cutting off his speech, the police must first

make bona fide efforts to protect the speaker from the crowd's hostility by other, less restrictive means.

*Bible Believers v. Wayne County*, 805 F.3d 228, 255 (6th circuit 2015)

STANDING

The defendants argue that I do not have standing. "To have standing, a party must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."RIVERA PUIG v. GARCIA ROSARIO, 1992 U.S. Dist. LEXIS 2011, *18. Of course, I was stopped from speaking before, and I don't want it to happen again. That is standing. I was stopped from being listened and heard before by audience members and by the media. I don't want it to happen again. This is standing. This is not abstraction. It is a concrete and real injury.

**"Because this suit involves First Amendment Freedoms, the standing to sue requirement should not be rigidly enforced**." *Advocates for the Arts v. Thomson*, 397 F. Supp. 1048, 1050 (Dist. New Hampshire 1975). When someone is not allowed to speak, they have standing, even if they were not the event organizer. *See, e.g., Bolan v. City of Keego Harbor*, 2002 U.S. Dist. LEXIS 21975, *15-16("Defendant city also argues that James Bolan does not have standing to bring a First Amendment claim against the city because only Diana Bolan was not allowed to speak. This assertion contradicts the undisputed facts. During the city council

meeting, James Bolan stood up to speak on behalf of Diana Bolan but was not allowed to speak. Therefore, he has standing to assert the violation against his First Amendment rights.); *Rivera Puig v. Garcia Rosario,* 1992 U.S. Dist. LEXIS 2011, *18-19 (Under this standard, it is abundantly clear that plaintiff has standing to sue. Plaintiff has personally been prevented from exercising his own **First** Amendment right to be present at preliminary hearings and has, in his professional capacity, been inhibited from reporting on these proceedings.)

INJUCTIONS ARE PROPER WHEN SOMEONE HAS BEEN SUBJECT TO THE WRONG BEFORE, EVEN WITH ASSURANCES IT WILL NOT HAPPEN AGAIN

Even though I was prevented from speaking before, even the mayor of Boston said on national television there would be no sound amplification, even though the media was not allowed to cover the event, and even though the audience was not allowed near the speakers, the defendants argue that they will not do it this time and therefore an injunction should not issue, with the full force of potential criminal contempt if it is violated.

Courts have rejected arguments before when injunctions are sought that though the wrong complained of was done before, the defendants have made assurances it would not happen again. See, Jenkins v. Greenwald, 13 F. Cas. 519, 522 (Cir. Court of Ohio 1885), ("I do not think it enough, on a question of injunction, for the defendant to say that he has done the thing complained of, **but will not do it again**." And further, "But if once the thing complained of has been done, I apprehend this court interferes, notwithstanding any promise the defendant may make not to do the same thing again.") This court should also.

PRIOR RESTRAINT

While I did not previously argue that there was prior restraint, there is a prior restraint of sorts by not giving a permit to have a rally, there are court decisions that suggest this is a prior restraint.

"A 'prior restraint' is when one is *restrained,* or, in other words, prevented, from making certain communications before the communications occurs." *Rattan v. Knox County Juvenile Court*, 2012 U.S. Dist. LEXIS 165339, *7. "A prior restraint rule is a government regulation that limits or conditions in advance the exercise of protected First Amendment activity." *Kessler v. City of Providence,* 167 F. Supp. 2d 482, 485 (Dist. Rhode Island 2001). "A rule that forces a person to ask permission to speak bears a heavier presumption against constitutionality than one that merely penalizes people who have already spoken." *Id.*

Likelihood of Success

In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis. As the Supreme Court has explained, "[t]he loss of First Amendment freedoms, for even [*11] minimal periods of time, unquestionably constitutes irreparable injury."

*Sindicato Puertorriqueño de Trabajadores v. Fortuño,* 699 F.3d 1, 10-11 (First Cir. 2011)

BUFFER ZONES

The *amicus curiae* of the ACLU is correct—there were huge buffer zones at the August rally and this should not happen at this rally—at least with non-disruptive people. Large buffer zones have in the past been problematic. *See, e.g., New York v. Operation Rescue Nat'l*, 273 F.3d 184, 205 (2nd Cir. 2001)("In addition to being unnecessary, the larger buffer zones have significantly curtailed the exercise of First Amendment rights in the public areas around BGW.") It is one thing to expel a violent member of Antifa. It is another to expel the speakers own audience. The former should happen. The latter should not.

VIEWPOINT DISCRIMINATION

Everyone else gets their permits on time, and here an applicant was not allowed to get a permit even though the website said the Parkman Bandstand was available. Others were traditionally allowed amplification. "When similarly complaint people are treated differently, there is viewpoint discrimination, and viewpoint discrimination is *per se* unconstitutional." *People for the Ethical Treatment of Animals v. Gittens*, 215 F. Supp. 2d 120, 134 n.4 (US District Court of Dist. Columbia 2002)("PETA argues that the motivation behind the Commission's inconsistent treatment of these similarly noncompliant entrants is its desire to prohibit a message it views as too controversial for the exhibit. While the Court does not need to determine whether that was, in fact, the motive behind the Commission's decision, it would note that if it were, it would be, per se, viewpoint discrimination and violative of the First

Amendment.)

### B. Undue Delay

"The core policy underlying Freedman is that *HN8* the license for a **First Amendment**-protected business must be issued within a *reasonable period of time*, because ***undue* delay** results in the suppression of protected speech." FW/PBS, 493 U.S. at 228 (emphasis added). Without adequate procedural safeguards ensuring prompt decisions on **permit** applications, licensing systems create the possibility that constitutionally protected expression will be suppressed. FW/PBS, 493 U.S. at 226. A licensing scheme that fails to provide definite limitations on the time within which a decision maker must make a determination is constitutionally infirm because the delay compels the speaker's silence. Riley v. National Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 802, 101 L. Ed. 2d 669, 108 S. Ct. 2667 (1988). Failing to confine the time within which the licensor must act on an application is a species of unbridled discretion that creates a risk of arbitrary suppression. FW/PBS, 493 U.S. at 226.

*Franken Equities, L.L.C. v. City of Evanston*, 967 F. Supp. 1233, 1237-1238 (Dist. Wis. 1977)

The core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech. Thus, the first two safeguards are essential: the licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied.

FW/PBS, Inc. v. Dallas, 493 U.S. 215, 228 (1990)

Submitted by himself, *pro se*,

Dated this November 16, 2017
PO Box 1082

Pittsfield, MA 01202-1082

RinaldoDelGallo@gmail.com

BBO 632880
(413) 445-6789